# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

N° 09 Civ. 1190 (RJS)

IN RE NORMAN L. COUSINS

NORMAN L. COUSINS,

Appellant,

VERSUS

JOHN S. PEREIRA, CHAPTER 7 TRUSTEE, AND
LEGAL ASSET FUNDING, LLC, CREDITOR,

Appellees.

OPINION AND ORDER
December 22, 2010

RICHARD J. SULLIVAN, District Judge:

Before the Court is an appeal by *pro se* Appellant Norman L. Cousins from the January 7, 2009 Order of the Honorable Robert D. Drain, Bankruptcy Judge (the "January 2009 Order"), in which Judge Drain approved the November 21, 2008 settlement between the Appellant's court-appointed Chapter 7 Trustee, John S. Pereira (the "Trustee"), and Legal Asset Funding, LLC ("LAF"), a creditor. The Court presumes the parties' familiarity with the procedural history of this action and the underlying bankruptcy proceedings. For the reasons set forth below, the January 2009 Order is affirmed.

I. BACKGROUND

Until recently, Appellant was an attorney who represented plaintiffs in medical malpractice suits.[1] Between January 2000 and November 2001, Appellant and LAF entered into a series of agreements whereby LAF advanced funds to Appellant, who in turn assigned a portion of his anticipated income from legal fees and disbursements in pending medical malpractice lawsuits to LAF. Specifically, LAF advanced approximately $340,000 to Appellant, who

---

[1] On October 19, 2010, the New York State Supreme Court ordered the disbarment of Appellant from the practice of law in the State of New York. *In re Cousins*, 909 N.Y.S.2d 421 (App. Div. Oct. 19, 2010).

in consideration thereof agreed to assign one-third of his legal fees to LAF, up to a total of $750,000 plus interest.[2] (Tr. of Jan. 16, 2009 Hearing ("Tr.") at 16, 21.) Although Appellant received several fee awards through settlements and/or favorable judgments, he failed to remit these fees to LAF. As a result, on January 5, 2004, LAF sued Appellant in the Superior Court of New Jersey.

On April 15, 2005, Appellant filed a voluntary petition for bankruptcy under Chapter 13 of the Bankruptcy Code, which he converted to a Chapter 7 petition on January 31, 2006. The bankruptcy petition thus automatically stayed LAF's suit against Appellant in New Jersey. On June 28, 2005, LAF filed a timely proof of claim against Appellant in the amount of $1.2 million (the "Claim"). The amount comprised the cap value that Appellant allegedly owed LAF under the contracts, plus interest accruing since 2001. On February 10, 2006, the United States Trustee appointed Appellee Pereira as the Chapter 7 Trustee. The Trustee objected to the Claim and filed a motion for an order expunging it pursuant to 11 U.S.C. § 502(d), which compels the bankruptcy court to disallow certain claims. The Trustee argued that the transfers were avoidable under 11 U.S.C. §§ 544, 548, and 550, and thus, the Claim should be disallowed under 11 U.S.C. § 502(d). (Br. of Chapter 7 Trustee – Appellee ("Trustee's Opp'n Br.") at 3.)

In March 2006, Judge Drain lifted the automatic stay of LAF's lawsuit against Appellant, permitting it to proceed. The Honorable Thomas P. Olivieri of the Hudson County Superior Court of New Jersey presided over the matter and made several rulings, *inter alia*, rejecting Appellant's argument that the agreements constituted loans subject to usury laws. (Resp't LAF Reply Br. ("LAF's Opp'n Br."), Ex. 6.) Judge Olivieri granted LAF's motion for summary judgment on June 23, 2006, noting that "Mr. Cousins ha[d] quite frankly admitted . . . that monies [were] owed to the plaintiff as a result of a contract dated November 10, 2001." (*Id.*, Ex. 8.) The state court determined the amount owed to LAF after conducting a series of proof hearings, and by Order dated July 11, 2007 found Appellant liable for approximately $1.4 million with a daily interest of $411.10 to accrue thereafter. (*Id.*, Ex. 1.) Whether LAF would be able to collect on the entire judgment was subject to the bankruptcy court's determination as to whether the Claim was secured or not, and application of the Bankruptcy Code's provisions on post-petition interest. (Tr. at 14; LAF's Opp'n Br. at 11-12.)

In an attempt to entirely resolve the Claim, the Trustee entered into a settlement agreement with LAF on November 21, 2008. (Trustee's Opp'n Br. at 3.) The principal terms of the agreement provided for (1) a reduction of the state court's judgment to $800,000, to be secured by Appellant's stake in two pending matters in New York state court (*Rogovin v. Wasserman* and *Brandes v. North Shore University Hospital*), and (2) an apportionment of thirty percent of the fees due to Appellant in the *Rogovin* matter to the Trustee. (January 2009 Order; Tr. at 50.) The Trustee moved to have the settlement approved by Judge Drain,

---

[2] Appellant disputes the nature of the agreements and insists that the transfer of funds represented loans that have since been repaid in full. Appellant asserts that he personally paid back a portion of the "loan," along with third party creditors of Appellant, who returned the balance of it. (Appellant's Br. at 2-6.) The Court need not address the merits of Appellant's argument, and finds no reason to reverse Judge Drain's decision on the basis of it. *See infra* Part III.

2

pursuant to Federal Rule of Bankruptcy Procedure 9019 on November 26, 2008.

Judge Drain conducted an extensive hearing on January 6, 2009, wherein he found the settlement to be "reasonable under the circumstances." (Tr. at 50-51.) Applying the framework provided by the Supreme Court in *TMT Trailer Ferry* and its progeny, Judge Drain considered several factors – including the estate's probability of successfully litigating the Claim against LAF – before reaching his conclusion. *See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (hereinafter "*TMT Trailer Ferry*"). Judge Drain found Judge Olivieri's rulings in the underlying litigation to be significant factors weighing in favor of a settlement approval. Judge Drain also analyzed the potential merits of the arguments to be raised on appeal and concurred with the Trustee's opinion that the probability of prevailing on an appeal was low. (Tr. at 54-55.) Specifically, Judge Drain found that the Trustee would face difficulty making credible arguments on appeal, due to: (1) an inability to make out a fraudulent conveyance claim since it would be difficult to prove that Appellant was insolvent at the time the payments were transferred (*id.* at 55); (2) the plain language of the agreements, demonstrating that Appellant had assigned his right to fees to LAF (as opposed to indicating that the transfer was a loan) (*id.* at 55-56); (3) Appellant's failure to remit even one-third of his legal proceeds to LAF, which further rebutted Appellant's argument that LAF was entitled to only one-third of Appellant's fees (*id.* at 29, 56); and (4) the fact that, undisputedly, "the obligation to perform under the assignment agreement was secured by a proper filing of a lien on the entire amount" (*id.* at 56). Judge Drain concluded that, at best, an appeal would lead to a remand to the trial court, where the Trustee again was unlikely to prevail. (*Id.*)

Judge Drain also weighed other factors to determine whether the settlement would be in the best interest of the estate. For example, while the bankruptcy court acknowledged the facts militating against approval, such as Appellant's intent to fund the appeal and a major creditor's opposition to the settlement (*id.* at 53), it determined that, absent a settlement agreement, the estate would run the risk of incurring further losses (*id.* at 56-58). Moreover, since the settlement agreement mandated LAF's release of any other potential claims, the estate could possibly benefit in the event that Appellant recovered legal fees greater than the amount agreed to in the settlement. (*Id.* at 58.) Finally, Judge Drain concluded that the settlement essentially reduced a possible judgment of $1.4 million to $800,000, making its acceptance a reasonable one. (*Id.* at 17.) Based on the foregoing, Judge Drain approved the settlement between the Trustee and LAF by the January 2009 Order.

On January 17, 2009, Appellant filed a notice of appeal to this Court. Appellant challenges Judge Drain's approval of the settlement and makes the following arguments to support his appeal: (1) the payments LAF provided him were loans, and not purchases, that have since been repaid in full (Appellant's Br. at 1-6); (2) the Trustee lacked sufficient knowledge of the underlying litigation to enter into a settlement agreement (*id.* at 14-17); and (3) the loans were criminally usurious, pursuant to N.J.S.A. 2C:21-19; General Obligations Law §§ 5-501(2), 5-511; N.Y. Penal Law § 190.40; and Banking Law § 14-a(1) (*id.* at 17-24).[3]

---

[3] Pursuant to the Court's Order dated July 17, 2009, all pages submitted by Appellant in excess of the

3

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 158(a)(1), district courts are vested with jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy courts. The district court evaluates the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Bennett Funding Group, Inc.*, 146 F.3d 136, 138 (2d Cir. 1998). A bankruptcy court's decision to approve a settlement, however, is reviewed "extremely deferentially" and is not "overturned unless its decision is manifestly erroneous and a clear abuse of discretion." *In re Liu*, 98 Civ. 5027, 1998 WL 890176, at *1 (2d Cir. Dec. 18, 1998). "Such a deferential standard is appropriate because a bankruptcy court is in the best position, as the . . . ongoing supervisory court for the bankruptcy proceeding, to determine whether a compromise is in the best interest of the estate and [is] fair and equitable." *In re Global Vision Prods., Inc.*, No. 09 Civ. 374 (BSJ), 2009 WL 2170253, at *3 (S.D.N.Y. July 14, 2009) (internal quotation marks and citation omitted). Reversal is warranted only "if no reasonable man could agree with the decision to approve a settlement." *Id.* (internal quotation marks and citation omitted).

"In undertaking an examination of the settlement, . . . th[e] responsibility of the bankruptcy judge . . . is not to decide the numerous questions of law and fact raised by appellants but rather to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks and citation omitted). The Supreme Court has instructed that in assessing the reasonableness of a proposed settlement, the court should apprise itself of the likelihood of success on the claim, as well as "the complexity, expense, and likely duration of litigation . . . and all other factors relevant to a full and fair assessment of the wisdom of the compromise." *TMT Trailer Ferry*, 390 U.S. at 424. "Courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have set forth factors for approval of settlements based on the original framework announced in *TMT Trailer Ferry*." *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007). These factors include:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of

---

limits set forth in Local Rule 7.1(b) are stricken and thus, the arguments raised therein are not considered in the instant appeal. Moreover, the Court does not consider Appellant's argument in the Reply Brief, where he asserts for the first time that "Thomas A. DeClemente may not represent [LAF] on this appeal." (Appellant's Reply Br. at 2-8.) An argument made for the first time in a reply brief is not properly before the Court. *See, e.g., Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 708-09 (2d Cir. 2007) (finding that defendants waived an argument since they raised it for the first time in a reply brief). Even if that argument were properly before the Court, it would still be rejected since the argument has no bearing on the matter before the Court.

4

the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining.

*Id.* (internal quotation marks and citations omitted). Finally, while "a bankruptcy court may consider the opinions of the trustee or debtor and their counsel that the settlement is fair and equitable," *Nellis v. Shugrue, Jr.*, 165 B.R. 115, 122 (S.D.N.Y. 1994), these opinions are not to be automatically accepted as reasonable, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993). Instead, the bankruptcy court must make independent determinations in approving a settlement. *Id.*

### III. DISCUSSION

After careful review of the record, the Court finds that Judge Drain did not abuse his discretion in approving the settlement agreement between the Trustee and LAF. The Court's review of the hearing transcript reveals that Judge Drain heard and considered all of Appellant's objections and required additional explanation from the parties before making his decision. After considering all of the appropriate factors, Judge Drain reasonably concluded that there were significant risks inherent in appealing Judge Olivieri's rulings and that the settlement was preferable. *See In re Liu*, 1998 WL 890176, at *1 (affirming bankruptcy judge's settlement approval since there were "risks inherent in continuing to litigate the disputed claims and [] the settlement was preferable under the circumstances."). Judge Drain amply supported his conclusion through his thorough analysis of the merits of the potential arguments to be raised on appeal.

Finding the benefits of pursuing an appeal to be speculative at best, Judge Drain weighed this unlikely benefit against the likely risk of further loss to the estate. Judge Drain also examined the terms of the settlement and found them to be reasonable and fair, given LAF's release of future potential claims and the possibility of a judgment resulting in a larger remittance to LAF. (Tr. at 56-58.) Accordingly, "[i]n light of the risks inherent in pursuing the underlying [C]laim[], the bankruptcy court's decision was well within its discretion." *In re Liu*, 1998 WL 890176, at *1.

The Court rejects each argument Appellant raises on this appeal, which the Court notes are identical to those already dismissed by Judges Olivieri and Drain. Appellant argues that the agreements giving rise to the Claim were loans that have since been repaid in full and/or should be voided since they were criminally usurious. Judge Drain addressed these arguments in his assessment of the likelihood that an appeal would be successful, and properly found them to be unpersuasive. *See supra* Part I (listing Judge Drain's reasons for why an appeal would likely not be successful). Judge Drain correctly concluded that the settlement option was a preferable one in light of all the hurdles the Trustee would face on an appeal. *See In re W.T. Grant Co.*, 699 F.2d at 608 (noting that the court need not decide every question of law and fact raised by appellants but rather need only canvass the issues to determine "whether the settlement falls below the lowest point in the range of reasonableness").

Appellant also argues that the Trustee lacked sufficient knowledge of the underlying litigation when opining on the matter before Judge Drain. Regardless of the merits of this particular claim, the Court finds that Judge Drain made an independent

5

evaluation of the issues raised before him at the hearing. He analyzed the strengths of the potential arguments to be raised on appeal, the likelihood that the arguments would prevail, and the potential risk of further loss to the estate in the event of an appeal. (Tr. at 53-58.) Accordingly, the Court finds that Judge Drain gave the issues the treatment they deserved, and made an "informed, *independent*" decision. *In re Ionosphere Clubs, Inc.*, 156 B.R. at 426 (emphasis added).

Finally, even if the Court did consider the arguments Appellant raises in the excess pages of his briefs, the Court would still conclude that Judge Drain did not abuse his discretion in approving the settlement agreement. Appellant believes that Judge Olivieri's judgment was erroneous because he allegedly failed to take into account the payments that Appellant insists were made to LAF. (Appellant's Br. at 43.) However, Appellant's argument is misdirected since it is neither the role of the Bankruptcy Court nor this Court to review the merits of the underlying state court judgment. In any event, Judge Drain thoroughly considered Appellant's concern in its evaluation of the settlement, and concluded that Judge Olivieri appeared to have taken the possibility of credits into account in his calculation of Appellant's debt, as did the Trustee and LAF in negotiating the terms of the settlement. (Tr. at 57.)

Having considered the various factors to be considered on a Rule 9019 motion, the Court finds Judge Drain was well within his discretion in concluding that the settlement did not fall below the lowest point in the range of reasonableness. *See In re W.T. Grant Co.*, 699 F.2d at 608. Judge Drain properly considered the likelihood – or unlikelihood – of the Trustee prevailing on an appeal, the progression of the underlying litigation, which had already resulted in three rulings favorable to LAF, the attendant expense and delay that would result from continuing to litigate the underlying Claim, and the benefits derived from the settlement agreement. (Tr. at 50-58); *see In re Prudential Lines, Inc.*, 170 B.R. 222, 246-47 (S.D.N.Y. 1994) (setting forth the factors to be considered on a Rule 9019 motion); *see also In re Global Vision Prods., Inc.*, 2009 WL 2170253, at *3 (reversal warranted only "if no reasonable man could agree with the decision to approve a settlement"). Accordingly, Judge Drain's conclusion that the compromise was in the best interest of the estate was plainly not an abuse of his discretion.

## IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's January 2009 Order. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

RICHARD J. SULLIVAN
United States District Judge

Dated: December 22, 2010
New York, New York

\* \* \*

Appellant is a *pro se* litigant, Norman Leonard Cousins, Law Offices, 310 Greenwich Street, Suite 21H, New York, New York 10013. Appellees are represented by Michael Richard Perle of Michael R. Perle, PC, 1265 Paterson Plank Road, Secaucus, New Jersey 07094.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/22/10

6